### MCCAUGHEY *et al.* v. SMITH *et al.*

The holders of a promissory note, without the knowledge or consent of the indorser, procured a third person to subscribe it for the purpose of adding to their security. The subscription was the same in form as if he had been an original maker. This is not such an alteration as to vitiate the note or discharge the indorser.

APPEAL from the Supreme Court. Action upon a promissory note. The facts were as follows: When the note was presented to the referee, on the trial, it was in these words and figures, viz.:

"$200. Ninety days after date, for value received, I promise to pay to the order of Origen Smith two hundred dollars, at the office of W. C. Curry & Co., Erie, Pa. Westfield, June 22, 1859.

(Signed)          "W. H. HUNGERFORD,
                         "ALFRED HALL."
(Indorsed)   "ORIGEN SMITH."

But when the note was indorsed by Smith, the name, W. H. Hungerford, was not signed to it; and the words, "office of W. C. Curry & Co." were not in it. A blank was left for the insertion of the place of payment; and the referee found that Smith authorized Hall to fill it in the manner he did, with the words, "office of W. C. Curry & Co." Hall delivered the note to the plaintiffs in exchange for goods they sold and delivered to him and Hungerford at or about the day of its date. Afterwards, and before the note became due, Hungerford, at the request of the plaintiffs, subscribed his name to the same, for the purpose of adding the security of his name with that of Hall to the plaintiffs, and without any other intent, and without the knowledge or consent of the defendant, Smith. Smith was the only party to the note who defended the action.

The referee decided that the plaintiffs were entitled to recover the amount of the note. After judgment in their favor, Smith appealed to the court at general term in the eighth district, where the judgment was reversed, and a new trial ordered, costs to abide the event. The plaintiffs appealed to this court from the order granting a new trial. The case was submitted on printed briefs.

*A. Dixon*, for the appellants.

*Kingsbury & Young*, for the respondent.

EMOTT, J. The question of the manner or effect of the insertion of the place of payment is not before us. The referee has found, as a fact, that Smith indorsed the note, having no place of payment stated in it, and that it was to be filled up with the name of a bank in Erie, Pa., and it was so filled up with the name of a banking house at that place. There is no exception to this finding, and it disposes of the objection that the place of payment was inserted in the note without authority. So also the question of notice of non-payment of the note, if it was open to the defendant upon the present answer, is disposed of in the same way.

The main question in the case is the effect upon the indors-er's liability of the addition of Hungerford's name to the note. It is certainly the result of the later authorities, that the addition of another maker to a note made by one or more parties is a material alteration of the contract. Instead of being the several or the joint obligation of the original party or parties, it becomes the joint or joint and several under-taking of different contractors. It is not material whether the change be prejudicial or the contrary: it is sufficient that it is material. (Parsons on Bills and Notes, vol. 2, p. 556; *Gardner* v. *Walsh*, 5 El. & B., 82.) In the case of *Chappell* v. *Spencer* (23 Barb., 584), the doctrine was applied in its strictest form, to vitiate a negotiable note whose holder had added his name as joint maker, instead of indorsing it, upon negotiating and obtaining the money upon it.

There is a difference between the present case and these, however, which must not be lost sight of. The referee finds in this case that the note was transferred to the plaintiff for goods sold, in its original condition, as the note of Hall, in-dorsed by Smith, and as declared upon in the complaint. Afterwards Hungerford, at the request of the plaintiffs, for the purpose of adding the security of his name, subscribed his name to the note. This made no alteration of the terms of the contract, of course, as to the amount, or time or place of pay-ment. It was not adding a joint maker, because the note had been made and negotiated. It was subscribing to become security upon a note already made and negotiated. Hunger-ford was not named in the original contract, and was not a party to it. He made a new contract with the holders of the note, as security for the maker, after the contract of the maker was completed. I do not see how he could become a maker of a note already made and delivered. If he could be held at all, I think, it must have been by treating him as guarantor. If this were so, the case is out of the rule; for a guaranty of a note is not an alteration of it, or of the maker's contract on it. I therefore disagree with the conclusion of the Supreme Court on this point.

I am led to the conclusion that the order for a new trial should be reversed.

DENIO, Ch. J., DAVIES, WRIGHT and SELDEN, Js., concurred, without passing upon the question as to the character of Hungerford's liability.

BALCOM, J. (dissenting). The Supreme Court made the order, granting a new trial, on the ground that the defendant, Smith, was discharged, as indorser of the note, by reason of Hungerford subsequently signing the same as maker, without his knowledge or consent.

It is laid down in Chitty on Bills (Spring. ed., 1854, p. 215), that, "after a promissory note has been made by one person, the name of another cannot be added thereto as surety, unless by indorsement, because his becoming a joint maker would be making a *new contract.*" The only authority cited to sustain this doctrine is the case of *Clerk* v. *Blackstock,* which was decided in 1816, and reported in 1 Holt N. P. Rep., 474. The note in that case was originally signed by Jackson, to whom the money, mentioned in it, was lent; and Clerk afterwards required some new security from Jackson, in consequence of which Blackstock's name was added to it as a surety. BAYLEY, J., said: "I think this note may be considered as a joint and several note. The letter *I* applies to each severally. Lord KENYON has ruled so. With respect to the other objection, if it were part of the bargain between Clerk and Jackson, that Blackstock should sign the note as principal, he might sign it at any time subsequent to Jackson's signature. But if it was no part of the original bargain, and Blackstock came in, upon an afterthought, as surety merely, the note will not be binding without an additional stamp."

In Byles on Bills of Exchange (published in 1829) the rule is stated as follows: "If a promissory note be signed by A, and subsequently by B, as surety for A, whilst the note is in the hands of the payee, it will be void, unless the signature of B is in pursuance of a previous agreement, at the time of making the note." (Byles on Bills, Law Library, 4th series,

vol. 36, p. 247.) The case of *Clerk* v. *Blackstock* (*supra*), is cited by Byles, and also *ex parte White* (2 Dear. & Chitt., 334), as authority for this rule.

The case of *Catton* v. *Simpson* (8 Adol. & Ellis, 136) was decided in 1838, wherein Lord DENMAN, Ch. J., held that a third person signing his name, as surety, to a note, after it had been negotiated, without any understanding or arrangement with the makers, was not an alteration of the note, but merely an addition, which did not annul the original liability of the makers. But that case was overruled by the Court of Queen's Bench, in 1855, in the case of *Gardner* v. *Walsh* (32 Eng. L. & E., 162), wherein it was expressly adjudged that the maker of a note is discharged from all liability to pay it, if the holder, without his knowledge or consent, procures another person to sign it as a joint maker. The court said: "We conceive that he (the original maker) is discharged from his liability if the altered instrument, supposing it to be genuine, would operate differently from the original instrument, whether the alteration be or be not to his prejudice." The same rule was laid down by the Court of Appeals of Kentucky (*Bank of Limestone* v. *Penrick*, 5 Monroe, 25), as early as 1827, and it was reiterated by that court in 1839, in *Pulliam* v. *Withers* (8 Dana, 98). It was adopted by the Supreme Court of this State, in the seventh district, in 1857, in *Chappell* v. *Spencer* (23 Barb., 584), and sustained by a very able opinion delivered by Justice SMITH.

The same doctrine is stated in Story on Promissory Notes (section 408, *a*), in these words: "The rule is that the maker of a note is discharged by any subsequent alteration, wherever the altered instrument would operate differently from the original, whether the alteration be or be not to the maker's prejudice. Thus, where A signed a note as the sole surety for B, and afterwards the payee procured C to sign, as additional surety, without A's knowledge or consent, this was held to discharge A from all liability on the note." Edwards, in his late Treatise on Bills and Promissory Notes, asserts the same doctrine. (Edw. on Bills, 681.)

The Supreme Court of Alabama held adversely to this rule,

McCaughey *v*. Smith.

in 1846, in the case of *The Montgomery Railroad Company* v. *Hurst* (9 Ala., 513). But that case cannot be followed. There is too much authority against the rule therein laid down to warrant its adoption in this State, whatever we might think of it as an original question.

It follows that this court must hold, that if the holder of a note, without the knowledge or consent of the maker, procures a third person to sign it as maker or surety, he thereby discharges the original maker from all liability thereon. And the rule is undisputed, that when the holder of a note discharges the maker from liability, without the knowledge or consent of the indorser, he thereby discharges the latter from all liability on the note.

The foregoing views show that the Supreme Court rightfully held in this case that the plaintiffs, by procuring Hungerford to sign the note, as additional surety, or maker, without the knowledge or consent of the defendant, Smith, who had indorsed it, discharged the latter from all liability thereon.

The order of the Supreme Court granting a new trial must, therefore, be affirmed, and final judgment rendered against the plaintiffs with costs.

MARVIN and ROSEKRANS, Js., also dissented.

Order reversed, and judgment at special term affirmed.